UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ADAN ISAK YUSUF, | |
| Petitioner, | Case No. C18-0503-RSL-MAT |
| v. | |
| JEFFREY A. UTTECHT, | REPORT AND RECOMMENDATION |
| Respondent. | |

INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Adan Yusuf is a state prisoner who is currently confined at the Coyote Ridge Corrections Center in Connell, Washington. He seeks relief under 28 U.S.C. § 2254 from a 2014 King County Superior Court judgment and sentence. Respondent has filed an answer responding to petitioner's federal habeas claims, and has submitted relevant portions of the state court record. Petitioner has filed a response to respondent's answer. This Court, having carefully reviewed petitioner's amended petition for writ of habeas corpus, respondent's answer, and the balance of the record, concludes that the petition should be denied and this action should be dismissed with prejudice.

/ / /

REPORT AND RECOMMENDATION - 1

FACTUAL BACKGROUND

The Washington Court of Appeals, in its order dismissing petitioner's first personal restraint petition, summarized the facts underlying petitioner's crimes as follows:

> The testimony at trial showed that, on the night of November 11, 2013, a group of men including Steven Alexander and Adam Beckman were drinking in City Hall Park. Yusuf approached the men and asked for a cigarette. Alexander said he didn't have any cigarettes. Yusuf became verbally aggressive, using profanity, and Alexander told Yusuf to "get the F out of here." Yusuf then pulled a piece of rebar out of his sleeve and attacked Alexander with it. Alexander wrested the rebar from Yusuf and then Beckman hit Yusuf several times.
>
> Yusuf walked about 20 feet away from the group and continued to verbally harass the other men. Alexander chased Yusuf with the rebar. Another man, Marvin Baker, yelled at Alexander to "let it go." Baker took the rebar away from Alexander and held Alexander down until he calmed down. Alexander and Baker then saw Beckman and Yusuf on the ground. Beckman was lying on top of Yusuf and Yusuf was stabbing Beckman with his right hand. Alexander ran over and attempted to pin Yusuf's wrist to stop him from continuing to stab Beckman. Yusuf cut Alexander on the hand and the shoulder blade.
>
> Police arrived and arrested Yusuf. Yusuf claimed that he was approached by a group of men who had assaulted him and tried to rob him and that he began stabbing the men in self-defense with his "sky blue knife." Police found a knife with a blue handle embedded in a tree trunk near where the group had been sitting. The knife was admitted at trial. No other knives were located. Beckman was transported to the hospital. He had suffered a life-threatening pneumohemothorax (where air and blood enters the space between the chest wall and lungs), massive blood loss and potentially fatal low blood pressure.

(Dkt. 15, Ex. 19 at 1-2.)

Petitioner was charged in King County Superior Court with one count of assault in the first degree for the alleged assault of Adam Beckman, and one count of assault in the second degree for the alleged assault of Steven Alexander. (*Id.*, Ex. 7.) The charging document also charged that petitioner was armed with a deadly weapon at the time of the assaults, namely, a knife. (*See id.*) Petitioner was convicted as charged following a jury trial, and was thereafter sentenced to a total term of 156 months confinement. (*Id.*, Ex. 5 at 632-33; Ex. 6 at 4.)

REPORT AND RECOMMENDATION - 2

## PROCEDURAL BACKGROUND

Petitioner appealed his convictions to the Washington Court of Appeals. (*See* Dkt. 15, Ex. 9.) Petitioner's appellate counsel identified a single ground for relief in petitioner's opening brief on appeal; *i.e.*, that the reasonable doubt instruction given by the trial court was constitutionally deficient. (*See id.*) Petitioner also filed a *pro se* statement of additional grounds for review, but that document contained only a narrative description of the crime from petitioner's perspective and did not appear to identify any additional grounds for relief. (*See id.*, Ex. 10.) On June 15, 2015, the Court of Appeals issued an unpublished opinion affirming petitioner's convictions. (*Id.*, Ex. 13.)

Petitioner thereafter filed a petition for review in the Washington Supreme Court. (*Id.*, Ex. 14.) Petitioner once again argued, as he did in the Court of Appeals, that the trial court's reasonable doubt instruction was constitutionally defective. (*Id.*, Ex. 14.) The Supreme Court denied petitioner's petition for review without comment on December 2, 2015, and the Court of Appeals issued its mandate terminating direct review on January 22, 2016. (*Id.* at 15, 16.)

On March 7, 2016, petitioner filed a personal restraint petition in the Washington Court of Appeals seeking relief from his convictions. (*Id.*, Ex. 17.) Petitioner identified the following three grounds for relief in his petition: (1) the evidence was insufficient to support the intent element of the charged crimes or the deadly weapon enhancement; (2) the trial judge failed to properly instruct the jury on the deadly weapon special verdict; (3) trial counsel provided ineffective assistance when he failed to locate witnesses to support petitioner's claim of self-defense, and failed to pursue an alternative defense of voluntary intoxication. (*Id.*) On September 27, 2016, the Chief Judge of the Court of Appeals issued an order dismissing the petition. (*Id.*, Ex. 19.)

Petitioner subsequently filed a motion for discretionary review in the Washington Supreme

REPORT AND RECOMMENDATION - 3

Court. (Dkt. 15, Ex. 24.) Petitioner presented the following two issues to the Supreme Court for review: (1) trial counsel provided ineffective assistance when he failed to employ the rules of evidence in support of a request for a continuance to obtain evidence relevant to petitioner's self-defense theory; and (2) the trial court abused its discretion when it failed to grant the requested continuance. (*See id.*) On June 21, 2017, the Commissioner of the Supreme Court issued a ruling denying petitioner's motion for discretionary review. (*Id.*, Ex. 25.) The Court of Appeals issued a certificate of finality on September 22, 2017. (*Id.*, Ex. 26.)

On April 13, 2017, while his motion for discretionary review was pending in the Washington Supreme Court, petitioner filed a second personal restraint petition in the Washington Court of Appeals. (*Id.*, Ex. 27.) Petitioner presented one ground for relief to the Court of Appeals in which he asserted that the state failed to present sufficient evidence that (a) his specific intent was to inflict great bodily harm, and (b) he assaulted the victim with a deadly weapon or inflicted great bodily harm. (*Id.*) On June 5, 2017, the Chief Judge of the Court of Appeals transferred the petition to the Washington Supreme Court for a final determination after concluding that the petition was improperly successive in the Court of Appeals. (*Id.*, Ex. 28.) On September 5, 2017, the Commissioner of the Supreme Court issued a ruling dismissing the petition. (*Id.*, Ex. 29.) Petitioner moved to modify the Commissioner's ruling, but that motion was denied without comment on November 8, 2017. (*Id.*, Exs. 30, 31.) The Supreme Court issued a certificate of finality on December 28, 2017. (*Id.*, Ex. 32.) Petitioner now seeks federal habeas review of his convictions.

<u>FEDERAL HABEAS PETITION/GROUNDS FOR RELIEF</u>

Petitioner presented his original federal habeas petition to the Court for filing on April 5, 2018. (*See* Dkt. 1.) Petitioner later submitted an amended petition which he believed to be more

REPORT AND RECOMMENDATION - 4

legible, and which added some clarifying language to his third ground for relief, but added no new claims. (*See* Dkts. 9 and 9-1.) The Court accepted the amended petition for filing, and respondent filed his answer thereto on July 24, 2018. (Dkt. 13.) Petitioner's amended petition identifies three grounds for relief: (1) the trial court's reasonable doubt instruction was constitutionally deficient; (2) trial counsel provided ineffective assistance when he failed to request a jury instruction on voluntary intoxication, and failed to call an expert witness to testify about stab wounds and angle of penetration; and, (3) the evidence presented at trial was insufficient to establish intent to inflict great bodily harm or to support the deadly weapon finding. (Dkt. 9 at 5, 7, 8.)

## DISCUSSION

Respondent asserts in his answer to the petition that petitioner has properly exhausted his first and third grounds for relief, but that he failed to properly exhaust his second ground for relief. (Dkt. 13 at 6-7.) Respondent argues that petitioner's unexhausted claim is now procedurally barred, and that the state courts properly rejected petitioner's remaining claims. (*See id*. at 6-10, 15-19, 27-35.)

### Exhaustion/Procedural Bar

A state prisoner is required to exhaust all available state court remedies before seeking a federal writ of habeas corpus. 28 U.S.C. § 2254(b)(1). The exhaustion requirement is a matter of comity, intended to afford the state courts "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks and citations omitted). In order to provide the state courts with the requisite "opportunity" to consider his federal claims, a prisoner must "fairly present" his claims to each appropriate state court for review, including a state supreme court with powers of discretionary review. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365

REPORT AND RECOMMENDATION - 5

(1995), and *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

It is not enough that all the facts necessary to support a prisoner's federal claim were before the state courts or that a somewhat similar state law claim was made. *Anderson v. Harless*, 459 U.S. 4, 6 (1982). The habeas petitioner must have fairly presented to the state courts the substance of his federal habeas corpus claims. *Id*. "If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court." *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996). A habeas petitioner who fails to meet a state's procedural requirements for presenting his federal claims deprives the state courts of the opportunity to address those claims in the first instance. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

Petitioner asserts in his second ground for federal habeas relief that he received ineffective assistance of counsel when his trial counsel (a) failed to request a voluntary intoxication instruction, and (b) failed to obtain an expert witness to testify about stab wounds and angle of penetration. (Dkt. 9 at 7.) While petitioner presented these claims to the Washington Court of Appeals in his first personal restraint petition, and the Court of Appeals adjudicated the claims, petitioner did not present these same arguments to the Washington Supreme Court in his motion for discretionary review. (*See* Dkt. 15, Exs. 17, 19, 24.) Instead, petitioner argued in his motion for discretionary review that his trial counsel provided ineffective assistance when he failed to employ the rules of evidence to support a request for a continuance to obtain evidence relevant to petitioner's self-defense theory. (*See id*., Ex. 24.)

Because the record makes clear that petitioner did not present the ineffective assistance of counsel claim asserted in this federal habeas action to the Washington Supreme Court for consideration, petitioner's ineffective assistance of counsel claim has not been properly exhausted.

REPORT AND RECOMMENDATION - 6

When a petitioner fails to exhaust his state court remedies and the court to which petitioner would be required to present his claims in order to satisfy the exhaustion requirement would now find the claims to be procedurally barred, there is a procedural default for purposes of federal habeas review. *Coleman*, 501 U.S. at 735 n. 1.

Respondent argues that petitioner, having failed to properly exhaust his ineffective assistance of counsel claim, would now be barred from presenting the claim to the state courts under RCW 10.73.090. (Dkt. 13 at 8-9.) RCW 10.73.090(1) provides that a petition for collateral attack on a judgment and sentence in a criminal case must be filed within one year after the judgment becomes final. Petitioner's conviction became final for purposes of state law on January 22, 2016, the date the Court of Appeals issued its mandate terminating direct review. *See* RCW 10.73.090(3)(b). It therefore appears clear that petitioner would now be time barred from returning to the state courts to present his unexhausted claim. *See* RCW 10.73.090.

When a state prisoner defaults on his federal claims in state court, pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Petitioner makes no effort to show cause or prejudice for his default. Petitioner does suggest that failure to consider his ineffective assistance of counsel claim is necessary to prevent a fundamental miscarriage of justice, but he offers no coherent argument to support this conclusory assertion. (*See* Dkt. 27 at 7-8.) Petitioner therefore fails to demonstrate that his unexhausted claim is eligible for federal habeas review. Accordingly, this Court recommends that petitioner's federal habeas petition be denied with respect to his second ground for relief.

REPORT AND RECOMMENDATION - 7

Standard of Review for Exhausted Claims

Federal habeas corpus relief is available only to a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See Williams*, 529 U.S. at 407-09.

The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). The Supreme Court has further explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Clearly established federal law means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-

REPORT AND RECOMMENDATION - 8

72. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

In considering a habeas petition, this Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). If a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

<u>Ground One:  Reasonable Doubt Instruction</u>

Petitioner asserts in his first ground for relief that the trial court's reasonable doubt instruction was constitutionally deficient. (Dkt. 9 at 5.) The portion of the instruction at issue here told jurors that "[a] reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence." (Dkt. 15, Ex. 8 at 8 (Instruction No. 5).) Petitioner argues in his amended petition that this language "actually shifts the burden of proof, that jurors would be led to believe that it is a defenants [sic] burden to prove he or she is not guilty, or that they must be able to write out their reason for acqutal [sic]." (Dkt. 9 at 5.)

In a criminal prosecution, the state must prove beyond a reasonable doubt every element of a charged offense. *In re Winship*, 397 U.S. 358 (1970). "The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994). In *Victor*, the Supreme Court explained that "so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt . . . the

REPORT AND RECOMMENDATION - 9

Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury." *Id*. (internal quotations and citations omitted). In reviewing the constitutionality of a reasonable doubt instruction, the proper inquiry is "whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard." *Id*. at 6.

The jury in petitioner's case received the following instruction explaining the presumption of innocence and reasonable doubt:

> The defendant is charged in two counts, Count I alleging the crime of assault in the first degree and Count II alleging the crime of assault in the second degree. Although these charges have been joined for trial, you must decide each count separately. Your verdict on one count should not control your verdict on the other count.
>
> The defendant has entered pleas of not guilty on all charges. That plea puts in issue every element of the crimes charged. The State, as the plaintiff, has the burden of providing each element of the charged crimes beyond a reasonable doubt.
>
> The defendant has no burden of proving that a reasonable doubt exists. A defendant in a criminal case is not compelled to testify and the fact that a defendant does not testify cannot be used as the basis for any inference by the jury and should not prejudice the defendant in any way.
>
> A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.
>
> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

(Dkt. 15, Ex. 8 at 8 (Instruction No. 5).)

The Washington Court of Appeals rejected petitioner's challenge to the reasonable doubt

REPORT AND RECOMMENDATION - 10

instruction on direct appeal, explaining its conclusion as follows:

> Adan Yusuf appeals his convictions for first and second degree assault, arguing that the court's reasonable doubt instruction is unconstitutional because it "tells jurors they must be able to explain or articulate a reason for having a reasonable doubt." We affirm.
>
> There is no articulation requirement in the instruction, which is taken from 11 Washington Practice: Washington Pattern Jury Instructions: Criminal 4.01, at 85 (3d ed. 2008 (WPIC)). The instruction simply states that "[a] reasonable doubt is one for which a reason exists . . . It is such a doubt as would exist in the mind of a reasonable person after . . . considering all of the evidence." Clerk's Papers at 55; WPIC 4.01 (emphasis added). The instruction has been repeatedly approved by the Washington Supreme Court and this court. See e.g., State v. Emery, 174 Wn.2d 741, 759-60, 278 F.3d 653 (2012) (noting that prosecutor's argument properly described "reasonable doubt as a 'doubt for which a reason exists'"); State v. Bennett, 161 Wn.2d 303, 307, 165 P.3d 1241 (2007); State v. Tanzymore, 54 Wn.2d 290, 291 n.2, 340 P.2d 178 (1959); State v. Harras, 25 Wash. 416, 421, 65 P. 774 (1901); State v. Thompson, 13 Wn.App. 1, 4-5, 533 P.2d 395 (1975); State v. Cosden, 18 Wn. App. 213, 221, 568 P.2d 802 (1977). We are bound by the decisions of our Supreme Court. State v. Gore, 101 Wn.2d 481, 486-87, 681 P.2d 227 (1984).
>
> In addition, in Thompson, Division Two of this court expressly rejected the precise argument made here, stating,
>
>> Furthermore, the particular phrase, when read in the context of the entire instruction does not direct the jury to assign a reason for their doubts, but merely points out that their doubts must be based on reason and not something vague or imaginary. A phrase in this context has been declared satisfactory in this jurisdiction for over 70 years. State v. Harras, 25 Wash. 416, 65 P. 774 (1901).
>
> Thompson, 13 Wn.App. at 5. We adhere to the decision in Thompson.

(Dkt. 15, Ex. 13.)

Petitioner argues that the state court's rejection of his challenge to the reasonable doubt instruction on direct appeal was contrary to, or constituted an unreasonable application of, United States Supreme Court precedent, apparently because the Court of Appeals relied on state cases and

REPORT AND RECOMMENDATION - 11

not federal cases in resolving the claim.[1]  (*See* Dkt. 27 at 7.)  Petitioner cites to a number of Supreme Court cases which he asserts were relevant to his claim, but which the Court of Appeals failed to apply, including *Sullivan v. Louisiana*, 508 U.S. 275 (1993), *Engle v. Isaac*, 456 U.S. 107 (1982), *Mullaney v. Wilbur*, 421 U.S. 684 (1975), *In re Winship*, *supra*, and *Jackson v. Virginia*, 443 U.S. 307 (1979).

The Supreme Court has made clear that "[a] state court's decision is not 'contrary to . . . clearly established Federal law' simply because the court did not cite our opinions. . . .  We have held that a state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'"  *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (citing *Early v. Packer*, 537 U.S. 3, 8 (2002)).  Thus, the mere fact that the Court of Appeals relied only on cases decided by the state courts in resolving petitioner's challenge to the reasonable doubt instruction is not dispositive.

To the extent petitioner complains that the Court of Appeals failed to apply the Supreme Court cases cited above, petitioner appears to rely on those cases simply to support the unassailable principle that the constitution requires the prosecution to prove every element of a charged offense beyond a reasonable doubt.  Petitioner does not explain how those cases undermine the conclusion of the Washington Court of Appeals with respect to the reasonable doubt instruction given in his case, and this Court cannot glean from its review of those cases how they might support plaintiff's challenge to the constitutionality of the instruction.  This Court discerns nothing in the language of the instruction which raised the degree of doubt required for acquittal and there appears no

---

[1] Petitioner, in his response to respondent's answer, also faults the state courts for failing to address his challenge to the reasonable doubt instruction in his personal restraint proceedings.  (*See* Dkt. 27 at 5-7.)  However, the record makes clear that petitioner presented no such challenge on collateral review, he presented the claim to the state courts only on direct review.

REPORT AND RECOMMENDATION - 12

reasonable likelihood that the jury understood the instruction to allow conviction based on proof insufficient to meet the *Winship* standard.  The Court of Appeals reasonably rejected petitioner's challenge to the constitutionality of the reasonable doubt instruction and petitioner's federal habeas petition should therefore be denied with respect to his first ground for relief.

Ground Three:  Sufficiency of the Evidence

Petitioner asserts in his third ground for relief that the evidence presented at trial was insufficient to support his conviction on the first degree assault charge or to support the deadly weapon finding.  (Dkt. 9 at 5.)  Petitioner argues in support of this claim that Washington law requires a defendant to act with intent to inflict great bodily harm, or to actually inflict great bodily harm, in order to be convicted of first degree assault, and that the state failed to prove the charge because he acted in self-defense.  (*Id.*)  Petitioner also argues that the state failed to establish that the knife used in the assault was over three inches long as is required for it to qualify as a deadly weapon under Washington law.  (*Id.*)

The Due Process Clause of the Fourteenth Amendment requires that the prosecution prove beyond a reasonable doubt each element of the charged offense.  *Carella v. California*, 491 U.S. 263, 265 (1989) (citing *Winship*, 397 U.S. at 364).  Due process claims challenging the sufficiency of the evidence are evaluated under the standard announced in *Jackson v. Virginia*, 443 U.S. 307 (1979).  The Supreme Court explained in *Jackson* that the relevant question in evaluating a claim of insufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id*. at 319.  This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Id*. at 324 n. 16.  The Supreme Court has made clear that it is the responsibility of the jury, and not a reviewing court, to

decide what conclusions should be drawn from the evidence admitted at trial. *Cavazos v. Smith*, 565 U.S. 1, 2 (2011).

The Supreme Court has also made clear that sufficiency of the evidence claims are subject to a second layer of judicial deference on federal habeas review. Specifically, the Supreme Court has held that "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (citing *Cavazos*, 565 U.S. at 2).

Petitioner raised his sufficiency of the evidence claim in two separate post-conviction proceedings in the state courts. The Court of Appeals denied relief on this claim in petitioner's first personal restraint proceeding, concluding that the evidence was sufficient as to both charged counts of assault:

> Yusuf argues that Beckman's and Alexander's injuries did not constitute "great bodily harm" or "substantial bodily harm." Yusuf's claim is without merit. The evidence showed that Beckman's injuries were life-threatening, and the cuts to Alexander's hand and the stab wounds to his shoulder were "temporary but substantial disfigurement."
>
> Yusuf also contends that the State failed to establish that he "intentionally" stabbed Beckman and Alexander because he was acting in self-defense. It is true that self-defense negates the intent element of a crime. State v. McCullum, 98 Wn.2d 484, 494, 656 P.2d 1064 (1983). But the jury rejected Yusuf's claim of self-defense. The jury was instructed that any use of force in self-defense must be reasonable, and there was sufficient evidence that Yusuf's use of a knife against Beckman and Alexander was not reasonable because Beckman and Alexander were not armed. In addition, the jury was also given a "initial aggressor" instruction, explaining that Yusuf could not claim self-defense if he provoked the confrontation. Here, there was also sufficient evidence to establish that Yusuf's actions – pulling a piece of rebar out of his sleeve and attacking the group with it – served to provoke the confrontation.

(Dkt. 15, Ex. 19 at 3-4.)

REPORT AND RECOMMENDATION - 14

Petitioner did not present an insufficiency argument to the Washington Supreme Court in his motion for discretionary review in his first personal restraint proceeding. However, petitioner did present an insufficiency claim in his second, successive, personal restraint petition, which was rejected by the Washington Supreme Court:

> Here the State presented witness testimony that Mr. Yusuf approached a group of homeless men and asked for a cigarette. When he was rebuffed, Mr. Yusuf became aggressive, taking out a piece of rebar and moving toward Steven Alexander with it. Mr. Alexander said he grabbed the rebar from Mr. Yusuf and chased Mr. Yusuf away. But at some point during the struggle, Mr. Yusuf stabbed Mr. Alexander twice in the shoulder blade. Adam Beckman saw the altercation and tried to help Mr. Alexander. At some point during his struggle Mr. Beckman also was stabbed. Mr. Beckman said he saw Mr. Yusuf threatening others with a knife in his hand, and then he ran over to tackle Mr. Yusuf. Mr. Beckman repeatedly punched Mr. Yusuf while Mr. Yusuf repeatedly stabbed Mr. Beckman. At the hospital doctors found that Mr. Beckman had sustained 16 stab wounds and faced life threatening injuries.
>
> . . . .
>
> Mr. Yusuf . . . argues that the injuries Mr. Beckman suffered do not meet the definition of "great bodily harm" because the State did not prove that Mr. Beckman's injuries created a probability of death. *See* RCW 9A.36.011(1) (to constitute first degree assault, act must be committed "with intent to commit great bodily harm"). But the definitional statute described great bodily harm as "bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ." RCW 9A.04.110(4)(c). Mr. Yusuf admits that the State presented testimony that Mr. Beckman's injuries were life threatening. A reasonable juror could have relied on this testimony to conclude that Mr. Yusuf's actions created a probability of death.

(Dkt. 15, Ex. 29 at 2-3.)

The Washington Supreme Court also rejected petitioner's challenge to the sufficiency of the evidence to support the deadly weapon finding in petitioner's second personal restraint proceeding:

> Mr. Yusuf argues that the knife used was two inches long and thus did not

REPORT AND RECOMMENDATION - 15

meet the statutory definition of a deadly weapon. But the jury instructions, as proposed by Mr. Yusuf, explained to the jury that a knife with a blade longer than three inches was a deadly weapon, while the question of whether a knife with a blade less than three inches was a deadly weapon was a question of fact for the jury to decide. Clerk's Papers at 13 (def.'s proposed instr.); and 66 (jury instr. 14). These instructions were consistent with *State v. Thompson*, 88 Wn.2d 546, 550, 564 P.2d 33 (1977) (jury could find knife with blade less than three inches was deadly weapon under circumstances of its use); and *State v. Cobb*, 22 Wn. App. 221, 223, 589 P.2d 297 (1978) (same). Consistent with this principle, the deadly weapon statute defines a deadly weapon as including "any knife having a blade longer than three inches," but also including any "implement or instrument which has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death." RCW 9.94A.825.

Here, the State presented evidence that Mr. Yusuf used a knife to stab Mr. Beckman 16 times in the midst of a heated confrontation. It presented sufficient evidence that Mr. Yusuf committed the crime with the use of a deadly weapon.

(*Id.*)

Petitioner argues in his response to respondent's answer that the state court's resolution of his sufficiency of the evidence claim constituted an unreasonable application of United States Supreme Court precedent, including *Jackson* and *Winship*. (Dkt. 27 at 12.) Petitioner details in his response the testimony of the two victims in this case, Mr. Alexander and Mr. Beckman, and he claims that the testimony "is incredible/unbelievable as a matter of law." (*Id*. at 9.) Petitioner also asserts that the verdict was against the weight of the evidence. (Dkt. 27 at 11.)

It is apparent that petitioner believes the jury erred in rejecting his claim of self-defense based on the evidence presented at trial, and that the state courts erred in failing to perceive that the testimony of the victims could not support the conclusion that petitioner acted with the requisite intent to commit the charged crimes. However, the Supreme Court has made clear that a reviewing court must be mindful of "the deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency review." *Wright v. West*, 505 U.S. 277, 296-97 (1992). In *West*, the Court emphasized the deference owed to the trier of fact:

REPORT AND RECOMMENDATION - 16

> We said [in *Jackson*] that "*all of the evidence* is to be considered in the light most favorable to the prosecution" . . . that the prosecution need not affirmatively "rule out every hypothesis except that of guilt" . . . and that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

*West*, 505 U.S. at 296-97 (quoting *Jackson*, 443 U.S. at 326) (citations omitted, emphasis in original).

This Court has read the transcript of the testimony presented at trial and has thoroughly reviewed the state court record. According deference to the jury findings, and to the state appellate courts' resolution of the claim in relation to the evidence presented at trial, this Court must conclude that the Washington courts reasonably rejected petitioner's challenge to the sufficiency of the evidence as there was, indeed, ample evidence in the record to support petitioner's convictions and the deadly weapon enhancement. Petitioner's federal habeas petition should therefore be denied with respect to his third ground for relief as well.

### Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to any of the claims asserted in his amended petition.

REPORT AND RECOMMENDATION - 17

CONCLUSION

Based on the foregoing, this Court recommends that petitioner's amended petition for writ of habeas corpus be denied and that this action be dismissed with prejudice. This Court also recommends that a certificate of appealability be denied with respect to all claims asserted in this federal habeas action. A proposed order accompanies this Report and Recommendation.

OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **March 15, 2019**.

DATED this 20th day of February, 2019.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION - 18